Thank you, Your Honors. I would like to try to reserve four minutes for rebuttal. It's a privilege to be here. My name is Sarah Baker. I'm from the Beck Law Firm in Bozeman, Montana, and we're representing the plaintiff's family. May it please the Court and Counsel, the District Court's decision upholding denial of benefits to E. J. must be reversed for three reasons. First, denial contravenes the federal and state statutory and regulatory scheme pursuant to which Medicaid must always pay after an ERISA plan. Second, the third-party reimbursement agreement demanded by the plan as a condition of coverage was not required under the plan's language, and it had the effect of significantly narrowing E. J.'s existing rights, both under the plan language and under the state and federal statutes and regulations. Third, the additional requested documentation the plaintiff's purported failure to provide, which was a basis for denial, was subject to contractual confidentiality agreements, was unnecessary to reach a determination as to benefits, and defendant's own refusal to execute a confidentiality agreement prevented plaintiffs from providing additional information. I have just some preliminary questions for you before you get to the heart of your argument. Two things. What's the status of the lawsuit against the anesthesiologist? It was disposed of long ago, years ago, with no recovery for her. Have the claims against the anesthesiologist been dismissed and completely resolved? Yes. And there's no – Yes. Was it settled for money, or was it – No. The anesthesiologist obtained a summary judgment in their favor, and I believe that was prior to the plan's existence, although I could be mistaken by – Well, in the report that the plan – that the administrators attached to their decision, they referenced – they discussed the pending lawsuit against the anesthesiologist, and they say it's unresolved, and they said it was pending in the Montana Supreme Court. That's correct. And that does remind me, the MSJ had been obtained by the anesthesiologist, but there was an appeal pending, and then at some point shortly thereafter, plaintiffs lost that appeal. All right. So that case is all over. It's all over. All right. So I'm still not clear, you know, after reading all the material that was provided, as to what documentation you actually provided to the plan. Okay. Almost immediately what was provided was the fact that the conditions at issue resulted from medical malpractice courts. Listen to my question. What documentation – they asked for a copy of the settlement agreement. Did you provide that to them? No, Your Honor. No. The confidentiality agreement – the settlement agreement, I'm sorry, was subject to a confidentiality agreement that had been approved by court order. So plaintiffs weren't free to just send that to them. Okay. Did you provide them with a copy of the special needs trust? We thought that we had. This issue was addressed in our brief that it appeared from our correspondence file as though it had been sent. They did not receive it, and it does appear to have been an oversight on our office's part. However, the pertinent – Have you refurnished it to them since? It's in the record. It was provided during the district court proceedings and is in the record. So they have it now? Yes. But you didn't provide it as soon as they said they needed it. That's correct. Once they said that they hadn't got it, you still didn't provide it. Right. What we said to – sorry. I'm just confirming that. I've read the briefs. Okay. And the other thing, I just want to step back and not interrupt the question, but just to clarify, subject to a confidentiality agreement approved by the court. That's right. Did you seek any relief or permission from the court to give it to them? We did not seek permission from the court. Your only reason was that it was confidential. There were other reasons in addition to that. One of those was that the plaintiffs were having issues in billings with their health care providers and didn't really want to tell anyone about the settlement. Because of that, there were rumors, and actually at the point of service, they were running into trouble with their providers. You had a court that could have addressed those issues. That's correct. Thank you. And the other reason was that it didn't seem to be – the two key pieces of information that seemed to be necessary to make a determination of benefits were the fact that the settlement had occurred prior to the plan's existence and that the funds had not been received by EJ or her parents but paid into a special needs trust, and not just any one but one that exists pursuant to 42 – Were all the funds paid into the trust? I don't know if you can answer that question publicly or not, but were all the funds that went to EJ put into the special needs trust? That's correct. Did you tell them that? Yes. It wasn't clear to me that that, in fact, is what happened. Well, I thought that it is clear from the documentary record, but it certainly was made clear by – Does the record contain a copy of the court order approving the settlement? It does now. I'm not sure. I didn't see that in the record. Okay. I do have it with me today, but it may not be in the record. Well, I'm just curious. You know, that's one of the basis for error that we alleged today was that the district court didn't allow further proceedings to supplement those documents. I would like to make the point that literally the minute that the plan made an offer to find a method for plaintiffs to provide additional documentation pursuant to either an in-camera review or some sort of additional confidentiality agreement between these parties, plaintiffs attempted to do that repeatedly. They sent repeated letters that are in the record saying, please just sign this confidentiality agreement, and we are prepared to send that to you. Plaintiffs argued in the district court that the court should consider those additional requests to send information, and the reason why is because one of the ways that a plan abuses its discretion is by failing to develop facts necessary to make a – Let me ask one last question just about the record. I don't quite understand the argument for why you would not – you were reluctant to sign the reimbursement agreement. I didn't understand the argument that it expanded their rights vis-à-vis the settlement money. Okay. Thank you, Your Honor. The plan itself provides for a reimbursement agreement to be demanded only when there's evidence of third-party liability. Here, the underlying tort feasors had extinguished their liability by entering into the confidential settlements. Even if the plan language had permitted one to be demanded at all, this one changed their relationship in four crucial respects. It expanded the right to reimbursement in two ways. It made it retroactive and made it applicable to additional sources, not just those set forth in the plan language, but it actually said all sources, which was different from what the plan document had said. It also made plaintiffs admit or concede or say in writing that they had received additional consideration when, in fact, plaintiffs were only asking for what they were entitled to already under the plan language and under existing law. Third, it substituted itself for all of the other plan documents. It said this third-party reimbursement agreement will be the entire agreement between the parties, effectively nullifying the plan documents. And fourth, if the third-party reimbursement agreement is interpreted consistently with the interpretation the plan gives to the same language in its plan documents, it required plaintiffs to sue their own special needs trust within one year from the date of signing the third-party reimbursement agreement. No, it doesn't make any sense at all. Well, and I'm not sure what I – as my understanding, they said that they provided you their standard reimbursement agreement. I saw that in their brief as well, and I take them at their word that it is standard. But if that is the case, their standard reimbursement agreement does not reasonably reflect their plan language. And under all of the cases to consider it, when a third-party reimbursement agreement departs unreasonably from plan language, it's an abuse of discretion. Okay. Do you want to save your – I will save my time for rebuttal. Okay. May it please the Court. My name is Tom Lawrence, and I represent the Montana Contractors Association Healthcare Trust. In my time, I will argue that the district court correctly held that the coverage issue, which was whether the plan could make a recovery for a settlement or if monies could be paid for injuries prior to when the participant became a member in the trust, that that issue was, in fact, litigated fully before the trustees and was also considered by the district court. That was one of the linchpin arguments that the appellant makes in their brief, is that that issue was never considered. And so that, to me, is a critical issue I'm going to address. Can you just – well, go ahead and say. Would you just, when you get done with your intro there, just give a succinct statement of what you think the relationship is between your coverage, Medicaid, and the special needs trust? Absolutely, Your Honor. Second, that the trustees were reasonable and not arbitrary and capricious in determining that the plan was not primary to Medicaid, since EJ was not entitled to benefits under the plan. Third, that the trustees were reasonable and not arbitrary and capricious in denying EJ's claim for benefits because EJ's counsel decided not to turn over requested documents. And then finally, that the trustees were reasonable and not arbitrary and capricious because – I read your brief. I mean, once you get to the – Absolutely. With respect to the – I can't tell if there's a failure to communicate or there's a tempest in a teapot or whatever, but – With respect to the Medicaid issue, Your Honor – A very seriously disabled child here. Absolutely. The way the plan reads, it does say, absolutely, that if there's coverage, that the plan is going to be primary to Medicaid. The problem is that throughout their brief, the appellants assume coverage and, of course, as the Court knows from reading the briefs and the record, we disagree with that. There was no coverage because they didn't turn over documents, because they didn't – But that's beginning the question. Okay. So if things had gone the way you think they should go, what would the plan's obligation be to pay for covered – that was incurred by EJ once her father was a covered person under the plan and she derivatively was covered? Well, Your Honor, I believe that would have depended upon how much the settlement amount was. Forget the settlement amount. There's no settlement. Just I want to know – What I'm trying to understand is, you know, she was injured. There's no prior condition exclusion. It's not that. Correct. She was injured. He gets a job. He gets covered by this health care plan because she's covered as a dependent. Okay. She has ongoing medical expenses. Forget the other sources. Sure. Under the plan, she would normally be entitled through her father to have those – they would get those expenses covered. Is that correct? Absolutely, Your Honor. Okay. And then you would be primary to Medicaid. Absolutely. Okay. And so to the extent that they were uncovered, then they could go to Medicaid, and Medicaid would pay whatever they would pay. Now we throw in the wrinkle that her injuries were caused by a serious malpractice situation, and she got a settlement of that, and it sits in a special needs trust. Okay. Is it your position that that trust fund must be used to pay otherwise covered expenses because it comes within your source of other funds clause and some kind of coordination of benefits clause? That's correct. So what you're saying is that they've got a fund of money that should be paying these ongoing expenses, and your position would be secondary to that, so that if they have a million dollars in that fund and she has $500,000 of medical – for some serious operation. I'm just going to exaggerate to collapse the time frame. So they would have to cough up $500,000 to pay for that, and that would go, in effect, against their deductible. Their deductible becomes whatever is in the special needs trust. Is that what you're saying? Well, that's – my only – it's a yes with one qualifier. If they had come forward and signed the reimbursement agreement and provided the information and had a dialogue with the trust, I think there's some chance, depending upon the amount of the settlement, that the trust may have been able to make some – may have been willing to make some kind of accommodation for them. But that's your basic position. Yes, Your Honor. As to how it operates. Yes, absolutely. And I'm going to ask my bottom-line question is, is this thing resolvable? If you two – if both parties get together, your brief suggests and the counsel's own argument about proffering to give information, it seems like the parties are coming within a block of each other and they can't walk the additional, you know, half block each to get together. Why is that? I mean, in other words, if we rule and say that the trust was correct in its request for documents, is that the end of it? Or can they then turn around and say, okay, now we'll give you the documents, the Ninth Circuit has spoken, and you can all work it out? That's a good question, Your Honor. I would say that the technical answer would be that they wouldn't – that the trust would not be required to do that because, you know, the policy reason from their perspective would be that, look, we want to encourage plaintiff participants to not put the trust through, you know, the expense for defending this litigation, for having to go through what they went through. Well, the bottom line here, as Judge Fisher said, there's a young child that has severe medical needs. Absolutely. Because of that, Your Honor, I – Why don't you take a – maybe Judge Fisher was heading there, but we have an excellent program of mediators. This is just a perfect case for the parties to sit down with a mediator to work out the sharing of information that's necessary. Now, why wouldn't you be willing to try that? Your Honor, if we were – if that was suggested, I would never – I would be the last one to reject that. I'm not – I mean, I would, of course, go back to the trustees and tell them that, you know, the court said we need to hold the appeal in abeyance and mediate this. And, of course, I would tell them that. You don't have to make a commitment today, but that's where I was trying to find out whether – I take it the parties have not tried to mediate. They have not. I mean, it's been this – you know, we've been somewhat insistent that, you know, we must have this information that the plan – as fiduciaries of this plan, it has to be operated pursuant to its terms, and we believe the terms require this information to be provided. And one of the reasons – one of the big problems, I think, really does go back to this – to this threshold issue of was this settlement subject to the plan terms. And the issue that the appellants contend from at the very beginning was not litigated before the trustees when there's all sorts of evidence at ER 2.89 to 2.99 that the trustees – surrounding this whole issue. Again, on page ER 2.94, lines two through nine, the trust office quotes EJ's argument about this. On ER page 2.95, you know, the issue is listed as one of the key issues in the case. And then, finally, the trustees do actually decide, and the district court affirms that decision, that this settlement does come within the terms of the plan. I think that's one of the toughest issues in this case, is that we've never been able to see eye-to-eye on that issue. Is it clear that the special needs trust can be used to pay the medical expenses? I mean, is that – is there settled law on that? I believe there is. What's your best case? What appellate court case? That it can't – that a special needs trust – Because Judge Fischer just went through with you. Well, I believe by its – I don't have a case for that, but I believe by its terms it can be. By its terms, it's – Well, isn't – the special needs trust is set up to protect the beneficiary's right to public benefits. Isn't that right? Correct. So can it be used in this fashion? Well, I would believe so since – because of the manner in which the appellants have not established their right to be covered under the plan, that it could be, because there is no other coverage out there. Is there a case law that's addressed this, though? Not that I'm aware of, Your Honor. No? No other Federal Circuit Court has addressed this? Not that I'm aware of. I'm not – How about a state court of appeal issue, any place in the country? The special needs trust exists all over the country. I'm not aware that – I mean, I'm not aware of it being addressed. Actually, there are some district court opinions that are a little bit mixed. There's the Hobbs case, but it doesn't really seem to hit right on this issue. One point that I would like to make on the reimbursement agreement, the appellants contend that it would expand the rights and do all these things, but, in fact, the way the plan is written, it on the front end excludes coverage for injuries caused by third parties. And so citing the reimbursement agreement actually does the opposite of what appellants contend. It actually gives them the right to get benefits under the plan. And if the plan, for example, said – if the plan didn't say that – There's some cases in the 11th Circuit where courts have held that you can't have a reimbursement agreement that adds a make whole rule exclusion, for example, if a plan doesn't provide it. But that's not the situation here. The situation here is all the essential elements that are in the reimbursement agreement are in the plan language. The plan language simply says, look, we don't cover injuries caused by third parties until this agreement is signed. And so, again, as the court alluded to earlier, I don't understand why the agreement wasn't signed. It doesn't make sense. Let me ask you two questions for you. Suppose they were to sign the reimbursement agreement, would you be obligated to pay and then seek reimbursement? At this point today? Well, suppose – let's just in the future. Let's just say they agree to sign the reimbursement agreement. They sign it. Would you be obligated to pay the medical benefits and then seek reimbursement from the Special Needs Trust? I don't think so. I think that – Why? Why not? Because the recovery – Because then it could – then they could – if they wanted to challenge the whole use of the Special Needs Trust – Because of the way – because of the way – They could then bring it up to the court. They could then get – you know, the issue could be framed to address. Because I think the way the plan language is written, it would become a coordination issue, that because those monies have already been recovered, that the amount – that the amount recovered by the appellant would be coordinated with the amount – the amount that the plan would have otherwise been obligated to pay. Well, the Special Needs – the TEPRA says in paragraph 4, trust agreement to pay medical expenses before conclusion of any action by or on behalf of covered person and so on creates a value that is in addition to the value. So in exchange for the trust agreement to pay the medical expenses, the defined term covered person agrees to proceed by claim. So that does seem to contemplate advance payment, while EJ's parents or whomever is supposed to do it are pursuing a claim against the Special Needs Trust. Well, I think that would be in the normal – in the normal – or the – I guess not the normal, the standard situation where reimbursement agreements are generally signed on the front end of the case as a third party claim is being made. Well, but there was no claim. That's their point. It's all done. Right. This is the end of a settlement. So why does – you're saying this clause 4 doesn't apply? I don't think it would apply in the way that the court is suggesting. I think it would – again, I think it would go back to more of a coordination issue since the – since the monies are already out there. It decides whether or not the Special Needs Trust is primary to you. I believe that the trustees do with – and then that decision is reviewed by the district court and then this court. I'm just trying to figure out how they're going to get this. Assuming that they sign the reimbursement agreement, I was just trying to figure out how they're going to – ultimately, I gather they want to preserve the fund that's in the Special Needs Trust as much as possible, for as long as possible for the special needs of this child. I mean, this child is in just terrible condition. Absolutely. So what you're basically saying is that this job that the father has comes with insurance, but as long as that fund is sitting out there, he doesn't have any insurance for EJ because he's got this fund that was set up for her lifetime. That's correct. So he could lose his job, basically lose the coverage, and he will have been drawing down. So it's as if you've basically got – whatever the Special Needs Trust is, it boils down to your company. The plan has a deductible which is equal to the amount of Special Needs Trust. That's the amount of time I was responding to the question. I hope so. Yes, Your Honor, that is correct. But the problem with both parties, that the Special Needs Trust and the appellants have and the trust has, none of these pots of money, if you will, are unlimited. They're all limited, and they all have to be preserved and looked after carefully. And the Special Needs Trust, no more or no less than this trust that's here to provide medical benefits for all the plan participants. It's limited. Everyone has a limited amount of funds available. Thank you. Thank you, Your Honors. I'm going to try to talk fast, so just interrupt me if you need to. Well, first of all, was there any effort or any feeling about mediating this case? Absolutely, Your Honor. We hoped to do that before we were here today. As you may know from the briefing, the Montana Department of Health and Human Services is involved and would probably have to be a participant, but plaintiffs are definitely interested in that. Okay. So the first point I'd like to make is that the last thing that counsel said was that all of the sources have to be preserved. The Congress of the United States of America has already made a determination of the priority. Counsel, I don't understand that argument. Okay. If, I mean, I'm aware of situations where Medicare, not Medicaid, but Medicare is either going to be primary or secondary, depending on whether the person who has the other coverage between husband and spouse is still actively employed or not. So in one situation, Medicare will be primary, and then the private plan will be secondary, but it flips if the covered person involved is currently employed. So you can have Medicare or Medicaid primary or secondary. Their argument is that, as I understand it, the Special Needs Trust is a fund, which as between the plan and the fund, the Special Needs Trust, the provision of the agreements of the plan says if you have other coverage than as between internally, that's going to be, the plan will be secondary to that. They'll be primary before Medicaid comes in, but their order of priority is the Special Needs Trust, that's used up, then the plan, and then tertiary would be Medicaid. Why isn't it? That's all it seems to be saying. Under 42 U.S.C. 1396B subsection O, in order to participate in Medicaid, the state has to pass laws or regulations that prevent ERISA plans from enforcing any provision that has the effect of making Medicaid primary to the ERISA plan. Montana complied with that mandate. How is Medicaid made primary to the plan? Because the Special Needs Trust exists pursuant to 42 U.S.C. 1396P subsection D4, which requires certain language, including, this isn't just language but provisions, that the trust has to be irrevocable, wholly discretionary. There must be provisions that say that the beneficiary has no control and can receive no payment. EJ can receive no payment from the Special Needs Trust, and it must include a provision that the funds in it will be used to reimburse the state if and when the beneficiary passes away. In this case, EJ could live to be 50 or beyond, based on expert testimony in the underlying action. So basically we have a scheme set up by the Congress of the United States, working with the states as a condition of their participation in Medicaid, that says you can't let ERISA plans in your state enforce the provisions that have the effect of making Medicaid primary to the plan. This decision has the effect of making Medicaid primary to the plan because the S&T will not pay if Medicaid pays. Medicaid pays. Therefore, the plan has removed itself entirely and made the order of coverage Medicaid, then the Special Needs Trust, instead of it being the plan, Medicaid, the Special Needs Trust. Suppose, let me ask you this, suppose EJ's father lost his job and was no longer covered by insurance, employer-provided insurance. The money in the Special Needs Trust at that point could be used to pay for her medical care, correct? Well, there's a professional trustee, and the plan document does say that this the Special Needs Trust essentially has its own coordination of benefits provision, which says we always pay last. We exist only to supplement public funds and private health insurance. And so it's within the discretion of the trustee to decide when they pay. And they make no payment to EJ. And one other quick point I would like to make that's related is that there is no scenario in which the plan would pay and the plaintiffs would be reimbursed from the Special Needs Trust because the Special Needs Trust won't pay if Medicaid pays and won't pay if the plan pays. And that's important because if you look at the language of their plan, it speaks to the plaintiff's obligations when they receive reimbursement. And they will never receive reimbursement for anything that the plan pays for. There's no scenario in which the professional trustee could consistently with the plan documents allow that to happen. The trustees have an obligation as well to preserve the fund of money that they have to pay these medical benefits for all the members of the plan, not only your client, but all the members of the plan. So they have to protect, look out for everybody's interest as well. Counsel, Judge Gould, if I could ask you a question when you have responded. No, that's fine. Here's my question for you. If there's a mediation here that's agreed to, we don't force that on anyone, but if the insurance company and EJ agree to mediate, would the trustees of the Special Needs Trust participate in that mediation as well? Because what is of concern to me here is I see the parents having to navigate between two sets of trustees. You've got the Healthcare Trust and the Special Needs Trust. And unless you get everybody in the same room, it might be hard to work it out. My anticipation is that the Special Needs Trustee would participate, but I don't represent them, so that's just based on, you know, the history of the case. I believe that they would. Okay, thank you. So quickly, because I'm running out of time, I just wanted to say that the plan's right of reimbursement is at ER 8.3, and the third-party reimbursement agreement language is at ER 8.5, and it says that this is the third-party reimbursement agreement they demanded plaintiffs sign. The trust's right to reimbursement shall apply to all sources or forms of recovery to which covered person was entitled or will become entitled. That is a pretty significant departure from the language in the plan, which applied to specified types of recovery and had mostly prospective language, to the extent it had one sentence that could arguably be interpreted retroactively. It just didn't apply to these circumstances because the plaintiffs themselves aren't reimbursed for anything the plan pays for. Okay. You are out of time, but thank you very much, counsel on both sides. And we will give you the opportunity by order. We will suggest mediation. As Judge Gould pointed out, it is not mandatory. Mediation doesn't work if it's crammed down people's throats, but I will echo what Judge Piazza said. We do have a very skilled staff of mediators, and it has proved helpful in the past, so I hope your clients and respective interested parties will avail yourselves of that service. Thank you. The case that I argued is submitted.
judges: Fisher, Gould, Paez